UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA | **SUPERSEDING INFORMATION** |
| v. | S2 23 Cr. 370 (JGLC) |
| BROAD BAY LTD., | |
| Defendant. | |

The United States Attorney charges:

## Overview

1.    Between at least in or about 2013 and through at least in or about August 2018, BROAD BAY LTD., the defendant, and other corporate entities under the direction and control of Joseph Lewis, a billionaire businessman and investor, engaged in a scheme to defraud Mirati Therapeutics, the investing public, and the Securities and Exchange Commission ("SEC") by amassing beneficial ownership of more than twenty percent of Mirati Therapeutics' stock in contravention of agreements with the company, by hiding Lewis's undisclosed ownership of Mirati Therapeutics shares through shell corporations in the names of nominees, and by deliberately omitting those entities from SEC filings and falsely reporting Lewis's share ownership of Mirati Therapeutics.

## Background

2.    Joseph Lewis is a British businessman and investor, and the principal owner of the Tavistock Group ("Tavistock"), which is an international private investment organization.

Tavistock's investment portfolio includes hundreds of companies, including in agriculture, sports, resort properties, and life sciences.

3.    BROAD BAY LTD., the defendant, is an international business company of which Lewis is the owner, director, and president.

4.    Mirati Therapeutics ("Mirati") was at all relevant times a publicly traded oncology company focused on the development of cancer therapeutics. Mirati was listed on the Nasdaq stock exchange. Mirati, which began as a Canadian company, was limited by Canadian law from having any shareholder own more than 19.99 percent of the company's stock. Lewis and certain affiliated companies were aware of this limitation, and to ensure compliance with this limitation, Lewis and his companies were issued warrants (the option to purchase a company's stock) by Mirati that only could be exercised if Lewis's total ownership of Mirati remained under 19.99 percent of the company's stock.

5.    As one of Mirati's largest shareholders, owning more than ten percent of Mirati's stock, Lewis and his companies were required to file schedules of share ownership with the SEC pursuant to Section 13(d) of the Securities Exchange Act and SEC Regulation 13D, as well as reports of transactions purchasing or selling the company's stock. During the period relevant to this Information, Lewis and certain of his companies reported to the SEC that they collectively beneficially owned between 16 and 19.99 percent of Mirati's stock.

The Fraudulent Scheme

6.    In or about 2013, in order to own more Mirati stock but circumvent both Canadian share ownership rules and the legal requirements that he report his share ownership to the SEC, Joseph Lewis, BROAD BAY LTD., the defendant, and other affiliated companies caused Mirati shares to be purchased in the names of offshore shell entities that Lewis ultimately controlled.

2

Specifically, in or about 2013, Lewis asked one of his employees to serve as the reported owner of an offshore entity—later named Jasara Investments—that would hold shares of Mirati that Lewis had previously purchased for another account, as well as purchase more Mirati shares with funds Lewis provided. As part of Lewis's agreement with his employee, in exchange for acting as the owner of the offshore entity, the employee would receive a share of the profits when the Mirati shares were sold. Although Lewis was not the nominal owner of Jasara Investments, he had effective control of the entity, and beneficially owned the additional shares of Mirati stock that it purchased.

7.    Additionally, in or about 2013, Lewis and certain employees and agents acting at his direction caused the creation of an offshore trust called Newton Trust for purposes of purchasing Mirati shares. Although Lewis was not the named beneficiary of the trust, he adopted a "letter of wishes," which stated that Lewis would be consulted about decisions about the Mirati stock.

8.    Shortly after the creation of Jasara Investments and the Newton Trust, and continuing through 2016, Lewis and his agents transferred funds to bank accounts held in Switzerland in those entities' names for the purpose of purchasing Mirati stock. Additionally, Lewis caused the shares of Mirati that were previously in another account to be transferred to Jasara Investments. In a further act of concealment, Lewis and employees and agents acting on his behalf avoided purchasing more than 4.95 percent of Mirati's stock through either Jasara Investments or Newton Trust in order to avoid the SEC reporting requirements that apply to individuals, entities, and groups of affiliates that own 5 percent or more of a company's stock.

9.    As a result of the scheme, Lewis was able to secretly purchase Mirati stock that he was otherwise restricted from purchasing, and falsely reported to the SEC in Schedule 13D reports

that he owned under 19.9 percent of Mirati's stock. Specifically, on approximately thirteen occasions between November 2013 and November 2017, Lewis and certain entities under his control falsely swore in SEC filings to incorrect Mirati share ownership totals. Specifically, on or about November 4, 2013, February 2, 2015, September 18, 2015, January 6, 2016, January 15, 2016, March 17, 2016, June 8, 2016, June 24, 2016, September 28, 2016, January 10, 2017, January 30, 2017, June 27, 2017, and November 20, 2017, Lewis caused certain entities under his control to falsely state in reports filed pursuant to Section 13(d) of the Securities Exchange Act that Lewis and the entities beneficially owned less than 20 percent of Mirati. At the time he swore to the accuracy of those reports, Lewis knew that they were not accurate. On multiple instances, Lewis was provided with a spreadsheet disclosing Lewis's true ownership of Mirati shares by including the share totals associated with Jasara Investments and Newton Trust. Nonetheless, while the secret spreadsheet provided to Lewis stated that he owned between 24 and 29 percent of Mirati stock, Lewis and the companies under his control publicly stated in his SEC filings that he owned less than 20 percent.

10.    As a result of falsely disclosing his beneficial ownership of Mirati shares, Lewis and his companies were able to exercise Mirati warrants that they would not otherwise have been entitled to exercise. Specifically, on or about October 3, 2017, Lewis in fact owned approximately 24.1 percent of Mirati stock, although he had reported owning an amount under 20 percent by deliberately omitting ownership of shares by Jasara Investments and Newton Trust. Because Lewis falsely reported his ownership of Mirati shares as under 19.9 percent, he was able to exercise the

4

warrants, and as a result, Mirati sold to him approximately $2,500,000 worth of stock for approximately $1,490,000 – a savings to Lewis and his entities of approximately $1 million.

11.    In or about 2018, Lewis and others acting at his direction caused the Mirati shares held by Jasara Investments and Newton Trust to be sold. After Lewis's employee completed the sale of millions of dollars' worth of Mirati stock, he transferred approximately $25 million from Jasara Investment's account to an account controlled by BROAD BAY LTD., the defendant, and Lewis. The remainder of the stock sale proceeds—approximately 7 percent of the money—was kept by the employee as his kickback for holding Lewis's Mirati shares.

12.    Joseph Lewis and other employees acting on behalf of BROAD BAY LTD., the defendant, and other entities kept secret the sale of Mirati stock through Jasara Investments and Newton Trust. Despite the fact that Lewis and others signed and caused to be filed four SEC Form 3s and eight SEC Form 4s disclosing the purchase and sale of Mirati stock between June 12, 2013, and June 11, 2018, Lewis and other employees and agents acting at his direction never disclosed the purchase or sale of Mirati stock through Jasara Investments and Newton Trust. As a result of these false statements and omissions in filings with the SEC, the SEC and investors who review SEC filings were deprived of material information about Lewis's ownership of Mirati, and Mirati was deceived into allowing Lewis to exercise warrants that he was otherwise prohibited from exercising.

## COUNT ONE
### (Securities Fraud)

The United States Attorney further charges:

13.    The allegations contained in paragraphs 1 through 12 of this Information are hereby repeated, realleged, and incorporated by reference, as if fully set forth herein.

14.    From at least in or about 2013 through at least in or about August 2018, in the

5

Southern District of New York and elsewhere, BROAD BAY LTD., the defendant, willfully and knowingly, directly and indirectly, by the use of a means and instrumentality of interstate commerce and of the mails, and of a facility of a national securities exchange, used and employed, in connection with the purchase and sale of a security, a manipulative and deceptive device and contrivance, in violation of Title 17, Code of Federal Regulations, Section 240.10b-5, by (a) employing a device, scheme, and artifice to defraud; (b) making an untrue statement of a material fact and omitting to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and (c) engaging in an act, practice, and course of business which operated and would operate as a fraud and deceit upon a person, to wit, the defendant and other entities under the direction and control of Joseph Lewis amassed beneficial ownership of more than twenty percent of Mirati's stock in contravention of agreements with Mirati, hid the undisclosed ownership of Mirati shares through shell corporations in the names of nominees, and falsely reported share ownership of Mirati to the SEC.

(Title 15, United States Code, Sections 78j(b) & 78ff;
Title 17, Code of Federal Regulations, Section 240.10b-5; and
Title 18, United States Code, Section 2.)

## FORFEITURE ALLEGATIONS

15.    As a result of committing the offense charged in Count One of this Information, BROAD BAY LTD., the defendant, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), any and all property, real and personal, that constitutes or is derived from proceeds traceable to the commission of said offense, including but not limited to a sum of money in United States currency representing the amount of proceeds traceable to the commission of said offense.

6

## Substitute Assets Provision

16.    If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

      a.      cannot be located upon the exercise of due diligence;

      b.      has been transferred or sold to, or deposited with, a third person;

      c.      has been placed beyond the jurisdiction of the Court;

      d.      has been substantially diminished in value; or

      e.      has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p) and Title 28, United States Code, Section 2461(c), to seek forfeiture of any other property of the defendant up to the value of the above forfeitable property.

(Title 18, United States Code, Section 981;
Title 21, United States Code, Section 853; and
Title 28, United States Code, Section 2461.)

_D Willi_

DAMIAN WILLIAMS
United States Attorney

7